## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN SHELDON                          :
2101 Nursery Road                      :        CIVIL ACTION
Lake City, PA 16423                    :
                                       :        NO.: _____
                  Plaintiff,           :
                                       :
      v.                               :
                                       :        **JURY TRIAL DEMANDED**
LOWE'S COMPANIES, INC. *d/b/a*         :
LOWE'S                                 :
2305 Asbury Road                       :
Erie, PA 16506                         :
                                       :
                  Defendant.           :

### CIVIL ACTION COMPLAINT

Brian Sheldon (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and

through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Lowe's Companies, Inc.

*d/b/a* Lowe's (*hereinafter* referred to as "Defendant") of the Americans with Disabilities Act, as

amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" -

29 U.S.C. §§ 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1]  As a direct

consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.     This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Western District of Pennsylvania.

5.     Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual with an address as set forth in the caption.

8.     Lowe's Companies, Inc. *d/b/a* Lowe's operates a chain of retail home improvement and appliance stores in several states throughout the United States (including Pennsylvania).

Plaintiff was hired through and worked at the home improvement chain store located at the address as set forth in the caption.

9.    At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## **FACTUAL BACKGROUND**

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    Plaintiff was employed by Defendant as a flatbed delivery driver from in or about November of 2014 until his unlawful termination (as discussed *infra*) on or about May 12, 2018, at Defendant's 2305 Asbury Road, Erie, Pennsylvania store location.

12.    Plaintiff's initial supervisor was Delivery Supervisor, Kristen (last name unknown, *hereinafter* "Kristen"), until Kristen's separation from Defendant in or about early 2017.

13.    During the latter part of his tenure through his termination, Plaintiff was primarily supervised by Delivery Supervisor Todd Moores (*hereinafter* "Moores") and generally supervised by Assistant Store Manager, John Morral (*hereinafter* "Morral") and Store Manager, Kevin Albrewczynski (*hereinafter* "Albrewczynski").

14.    Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

15.    At all relevant times during his employment with Defendant, Plaintiff's young son and daughter both suffered from serious health conditions, including but not limited to tracheomalacia (collapse of the airway while breathing) and associated complications.

16.    As a result of their aforesaid serious health conditions, Plaintiff's son and daughter have compromised immune systems, often resulting in ear infections, severe difficulty breathing and eating, high temperatures and pneumonia, which can require emergency doctor and hospital visits for treatment.

17.    From in or about early 2016 through his termination on or about May 12, 2018, Plaintiff required intermittent leave under the Family and Medical Leave Act ("FMLA") to care for his son and daughter because of their health conditions (described *supra*) and at all times relevant herein, Defendant was aware of Plaintiff's son's and daughter's health conditions.

18.    Plaintiff's intermittent medical leave for his son's and daughter's serious health conditions was approved by Defendant from a company standpoint when he submitted initial FMLA certifications to Human Resources personnel, Brian (last name unknown, *hereinafter* "Brian") for his daughter in 2016 and son in 2017, as well as FMLA re-approval paperwork every six months for both children.

19.    However, toward the end of Plaintiff's employment with Defendant and specifically after Moores became Plaintiff's supervisor, Defendant's management, including but not limited to Moores, subjected Plaintiff to multiple forms of hostility and animosity because he needed to take time off from work to attend his son's and daughter's doctor's appointments and to treat and care for their aforesaid health conditions.  For example, but not intended to be an exhaustive list:

    a.  Moores began to overly scrutinize Plaintiff and criticize his work;

    b.  Moores began to treat Plaintiff in a rude and demeaning manner, often ignoring Plaintiff or walking away from him after he asked Moores a question or for help;

  c. Defendant's management stopped scheduling Plaintiff for operation of the flatbed truck (the position for which he had been hired) but instead primarily scheduled him to work the box truck which required substantially more labor and lifting, exacerbating Plaintiff's own health conditions (discussed in more detail *infra*); and

  d. Approximately six months prior to his termination, Plaintiff was at work and received a call that his son needed to go to the hospital. When Plaintiff informed Moores that he needed to leave to care for his son's aforesaid serious health conditions and that he had FMLA leave, Moores hostility responded "you can't leave, your FMLA leave and your child are not my problem."

  20. Plaintiff objected to the aforesaid discriminatory mistreatment that he was being subjected to, specifically informing Brian that Moores was refusing to allow him to use his approved FMLA leave to treat and care for his son's serious health conditions. Brian told Plaintiff not to worry about Moores and allowed him to leave to care for his son's serious health conditions.

  21. Following Plaintiff's complaints of discriminatory mistreatment to Brian (*see* Paragraph 20), Defendant's management, including but not limited to Moores, subjected Plaintiff to increased animosity and hostility through verbal reprimands and disparate treatment.

  22. In addition to his son's and daughter's serious health conditions, at all relevant times during his employment with Defendant, Plaintiff also suffered from a shoulder-related disability. As a result, Plaintiff experienced stiffness, limited mobility, and pain, which (at times) limited his ability to perform some daily activities, including lifting, pushing, and pulling (among other daily life activities).

23.    Despite his aforementioned health conditions and limitations, Plaintiff was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

24.    For example, during the last year of Plaintiff's employment with Defendant, when he stopped being scheduled for the flatbed truck and was only scheduled for the box truck, Plaintiff informed Moores that the more strenuous activity (including physically moving and breaking down heavy appliances) was aggravating his shoulder condition and causing him pain, but Moores ignored him.

25.    Plaintiff asked Moores on several occasions why he had been removed from the flatbed truck (the position for which he had been hired) and asked that he be scheduled for the flatbed truck to alleviate and prevent further injury to his shoulder condition (a reasonable accommodation).

26.    In response to Plaintiff's inquiries and request for a reasonable accommodation (i.e., returning to the flatbed truck schedule), Moores advised Plaintiff, "This is the way I want it," and continued to schedule Plaintiff for the more labor-intensive box truck work.

27.    In the weeks preceding his termination, Plaintiff approached Morral and discussed the best time to take a medical leave of absence (as he intended to coordinate it around business needs) for a shoulder surgery that his doctor had recommended.

28.    Plaintiff further informed Morral that because Defendant's management had failed to schedule him back on the flatbed truck, he would have to schedule the surgery sooner rather than later because the box truck work was exacerbating his shoulder condition, and asked Morral why he was still not being scheduled for the flatbed truck.

29.    In response to Plaintiff's inquiry as to why he was not being scheduled for the flatbed truck, Morral replied that "we had a meeting and decided to leave you on the box truck because your FMLA needs make you unreliable, we need someone more reliable."

30.    Following his aforesaid conversation with Morral, Plaintiff again reported the discriminatory treatment that he was receiving from Defendant's management to Brian, specifically informing him that Defendant's management was not assigning him to the flatbed truck as a result of his FMLA needs.   Plaintiff further informed Brian that because Defendant's management refused to assign him to the flatbed truck, he would need to schedule his shoulder surgery in the very near future because his work on the box truck was exacerbating his health condition.

31.    In response to Plaintiff's concerns regarding Defendant's management's discrimination/retaliatory treatment, Brian informed Plaintiff that he could take FMLA and would be entitled to 12 weeks of FMLA leave; however, approximately two weeks following his conversation with Brian, Plaintiff was abruptly terminated by Morral and Albrewczynski.

32.    Upon Plaintiff's request to Morral and Albrewczynski for a reason for his termination, Morral and Albrewczynski replied "we can't tell you why you are fired." It was not until Plaintiff filed for unemployment compensation benefits that Defendant claimed Plaintiff had been terminated for unauthorized use of company equipment.

33.    Defendant's purported reason for terminating Plaintiff – unauthorized use of company equipment – is patently false and completely pretextual because (1) Plaintiff consistently worked hard for Defendant and performed his job well; (2) Plaintiff did not have a disciplinary history while working for Defendant; (3) Plaintiff did not engage in unauthorized use of company equipment – nor was he ever accused of or disciplined for same before his termination; (4) Plaintiff

7

was terminated shortly after informing Defendant's management of his need for medical leave to undergo shoulder surgery for his health condition; and (5) Plaintiff was subjected to animosity and hostility after apprising Defendant of his and his children's serious health conditions (and need for accommodations pertaining to his own health conditions).

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

34.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35.    Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities including, but not limited to including lifting, pushing, and pulling.

36.    Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

37.    Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

38.    Plaintiff requested reasonable accommodations from Defendant, including but not limited to being scheduled for the flatbed truck (the position for which he was hired) to alleviate and prevent further injury to his shoulder condition and block leave to undergo shoulder surgery for his health condition.

39.    Plaintiff was subjected to hostility and animosity due to his health and/or requests for accommodations through demeaning and/or discriminatory treatment towards him.

8

40.     Defendant failed to properly accommodate Plaintiff by refusing to schedule him on back on the flatbed truck (the position for which he was hired) so that he could alleviate and prevent further injury to his shoulder condition, which was exacerbated by the more strenuous and laborious work on the box truck.

41.     Plaintiff complained to Defendant's management that he believed the negative treatment he was receiving constituted disability discrimination and retaliation for his requests for accommodations.

42.     Plaintiff was terminated from his employment with Defendant, shortly after requesting reasonable accommodations and in close proximity to his complaints of disability discrimination and retaliation.

43.     Plaintiff therefore believes and avers that he was terminated by Defendant due to (1) his known and/or perceived disabilities, (2) his record of impairment; (3) in expressing concerns of unfair treatment as a result of his disabilities; and/or (4) requesting reasonable accommodations, including but not limited to being scheduled for the flatbed truck (the position for which he was hired) to alleviate and prevent further injury to his shoulder condition and block medical leave to undergo surgery.

44.     These actions as aforesaid constitute violations of the ADA.

## COUNT II
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
### (Associational Disability Discrimination)

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Plaintiff's son and daughter suffered from qualifying health conditions under the ADA, including but not limited to Tracheomalacia and its accompanying complications.

47.     Defendant knew of Plaintiff's son's and daughter's disabilities at the time of Plaintiff's termination.

48.     Plaintiff was terminated by Defendant for completely pretextual reasons shortly after requesting and/or utilizing intermittent time off for his son's and daughter's medical treatment and doctors' appointments.

49.     Upon information and belief, Plaintiff believes and avers that he was terminated by Defendant for: (a) being perceived as distracted for dealing with his son's and daughter's health problems in and outside of work; (b) being perceived as having to miss time at work to care for his son and daughter; and/or (c) for other reasons in association with his son's and daughter's health problems.

50.     These actions as aforesaid constitute violations of the ADA, as amended.

### COUNT III
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

53.     Plaintiff requested leave for medical reasons (his own and his children's) from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

54.     Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

55.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

56.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

57.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; and/or (4) by making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

11

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 17, 2019