### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN SHELDON : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | CASE NO.: 19-173 |
| v. : | |
| : | |
| LOWE'S COMPANIES, INC. *d/b/a* : | |
| LOWE'S : | |
| : | |
| Defendant. : | |

### Fed. R. Civ. P. 26(f) REPORT OF THE PARTIES

Counsel for the parties and unrepresented parties shall confer regarding the matters identified herein and prepare a signed report in the following form to be filed at least 21 days before the Initial LCvR 16.1 Scheduling Conference or at such other time as ordered by the court. This report form may be downloaded from the Court's website as a word-processing document and the information filled in as requested on the downloaded form. The dates to be provided in the report are suggested dates and may be accepted or modified by the Court.

1. **Identification of counsel and unrepresented parties**. *Set forth the names, addresses, telephone and fax numbers and e-mail addresses of each unrepresented party and of each counsel and identify the parties whom such counsel represent:*

   Julia W. Clark, Esq.
   Karpf, Karpf & Cerutti, P.C.
   3331 Street Road
   Two Greenwood Square, Suite 128
   Bensalem, PA 19020
   Phone (215) 639-0801
   Email jclark@karpf-law.com
   *Attorney for Plaintiff Brian Sheldon*

   Michael E. Truncellito, Esq.
   Buchanan Ingersoll & Rooney PC
   Two Liberty Place
   50 S. 16th Street, Suite 3200
   Philadelphia, PA 19102
   (215) 665-4016 Phone
   Michael.truncellito@bipc.com Email
   *Attorney for Defendant Lowe's Companies, Inc. d/b/a Lowe's*

2. **Set forth the general nature of the case** *(patent, civil rights, anti-trust, class action, etc.)*: *Employment Discrimination*

<u>Plaintiff's Information:</u>

Plaintiff, Brian Sheldon, has initiated this action to redress violations by Defendant of the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").

Mr. Sheldon was employed by Defendant as a flatbed delivery driver from in or about November of 2014 until his unlawful termination on or about May 12, 2018, at Defendant's 2305 Asbury Road, Erie, Pennsylvania store location. Mr. Sheldon's initial supervisor was Delivery Supervisor, Kristen (last name unknown) until Kristen's separation from Defendant in or about early 2017. During the latter part of his tenure through his termination, Mr. Sheldon was primarily supervised by Delivery Supervisor Todd Moores and generally supervised by Assistant Store Manager, John Morral and Store Manager, Kevin Albrewczynski. Throughout his employment with Defendant, Mr. Sheldon was a hard-working employee who performed his job well.

At all relevant times during his employment with Defendant, Mr. Sheldon's young son and daughter both suffered from serious health conditions, including but not limited to tracheomalacia (collapse of the airway while breathing) and associated complications. As a result of their serious health conditions, Mr. Sheldon's son and daughter have compromised immune systems, often resulting in ear infections, severe difficulty breathing and eating, high temperatures and pneumonia, which can require emergency doctor and hospital visits for treatment.

From in or about early 2016 through his termination on or about May 12, 2018, Mr. Sheldon required intermittent leave under the Family and Medical Leave Act ("FMLA") to care for his son and daughter because of their health conditions and at all times relevant herein, Defendant was aware of Mr. Sheldon's son's and daughter's health conditions. Mr. Sheldon's intermittent medical leave for his son's and daughter's serious health conditions was approved by Defendant from a company standpoint when he submitted initial FMLA certifications to Human Resources personnel, Brian (last name unknown) for his daughter in 2016 and son in 2017, as well as FMLA re-approval paperwork every six months for both children. However, toward the end of Mr. Sheldon's employment with Defendant and specifically after Moores became Mr. Sheldon's supervisor, Defendant's management, including but not limited to Moores, subjected Mr. Sheldon to multiple forms of hostility and animosity because he needed to take time off from work to attend his son's and daughter's doctor's appointments and to treat and care for their health conditions. For example, but not intended to be an exhaustive list: Moores began to overly scrutinize Mr. Sheldon and criticize his work; Moores began to treat Mr. Sheldon in a rude and demeaning manner, often ignoring Mr. Sheldon or walking away from him after he asked Moores a question or for help; Defendant's management stopped scheduling Mr. Sheldon for operation of the flatbed truck (the position for which he had been hired) but instead primarily scheduled him to work the box truck which required substantially more labor and lifting, exacerbating Mr. Sheldon's own health conditions; and Approximately six months prior to his termination, Mr. Sheldon was at work and received a call that his son needed to go to the hospital. When Mr. Sheldon informed Moores that he needed to leave to care for his son's serious health conditions and that he had FMLA leave, Moores hostility responded "you can't leave, your FMLA leave and your child are not my problem." Mr. Sheldon objected to the discriminatory mistreatment that he was being subjected to, specifically informing Brian that Moores was refusing to allow him to use his approved FMLA

leave to treat and care for his son's serious health conditions.  Brian told Mr. Sheldon not to worry about Moores and allowed him to leave to care for his son's serious health conditions. Following Mr. Sheldon's complaints of discriminatory mistreatment to Brian, Defendant's management, including but not limited to Moores, subjected Mr. Sheldon to increased animosity and hostility through verbal reprimands and disparate treatment.

In addition to his son's and daughter's serious health conditions, at all relevant times during his employment with Defendant, Mr. Sheldon also suffered from a shoulder-related disability.  As a result, Mr. Sheldon experienced stiffness, limited mobility, and pain, which (at times) limited his ability to perform some daily activities, including lifting, pushing, and pulling (among other daily life activities).  Despite his health conditions and limitations, Mr. Sheldon was still able to perform the duties of his job well with Defendant; however, Mr. Sheldon did require reasonable medical accommodations at times. For example, during the last year of Mr. Sheldon's employment with Defendant, when he stopped being scheduled for the flatbed truck and was only scheduled for the box truck, Mr. Sheldon informed Moores that the more strenuous activity (including physically moving and breaking down heavy appliances) was aggravating his shoulder condition and causing him pain, but Moores ignored him. Mr. Sheldon asked Moores on several occasions why he had been removed from the flatbed truck (the position for which he had been hired) and asked that he be scheduled for the flatbed truck to alleviate and prevent further injury to his shoulder condition (a reasonable accommodation). In response to Mr. Sheldon's inquiries and request for a reasonable accommodation (i.e., returning to the flatbed truck schedule), Moores advised Mr. Sheldon, "This is the way I want it," and continued to schedule Mr. Sheldon for the more labor-intensive box truck work.

In the weeks preceding his termination, Mr. Sheldon approached Morral and discussed the best time to take a medical leave of absence (as he intended to coordinate it around business needs) for a shoulder surgery that his doctor had recommended.  Mr. Sheldon further informed Morral that because Defendant's management had failed to schedule him back on the flatbed truck, he would have to schedule the surgery sooner rather than later because the box truck work was exacerbating his shoulder condition, and asked Morral why he was still not being scheduled for the flatbed truck. In response to Mr. Sheldon's inquiry as to why he was not being scheduled for the flatbed truck, Morral replied that "we had a meeting and decided to leave you on the box truck because your FMLA needs make you unreliable, we need someone more reliable." Following his conversation with Morral, Mr. Sheldon again reported the discriminatory treatment that he was receiving from Defendant's management to Brian, specifically informing him that Defendant's management was not assigning him to the flatbed truck as a result of his FMLA needs.  Mr. Sheldon further informed Brian that because Defendant's management refused to assign him to the flatbed truck, he would need to schedule his shoulder surgery in the very near future because his work on the box truck was exacerbating his health condition. In response to Mr. Sheldon's concerns regarding Defendant's management's discrimination/retaliatory treatment, Brian informed Mr. Sheldon that he could take FMLA and would be entitled to 12 weeks of FMLA leave; however, approximately two weeks following his conversation with Brian, Mr. Sheldon was abruptly terminated by Morral and Albrewzynski. Upon Mr. Sheldon's request to Morral and Albrewczynski for a reason for his termination, Morral and Albrewczynski replied "we can't tell you why you are fired."  It was not until Mr. Sheldon filed for unemployment compensation benefits that Defendant claimed Mr. Sheldon had been terminated for unauthorized use of company equipment.

Defendant's purported reason for terminating Mr. Sheldon – unauthorized use of company equipment – is patently false and completely pretextual because (1) Mr. Sheldon consistently history while working for Defendant; (3) Mr. Sheldon did not engage in unauthorized use of

company equipment – nor was he ever accused of or disciplined for same before his termination; (4) Mr. Sheldon was terminated shortly after informing Defendant's management of his need for medical leave to undergo shoulder surgery for his health condition; and (5) Mr. Sheldon was subjected to animosity and hostility after apprising Defendant of his and his children's serious health conditions (and need for accommodations pertaining to his own health conditions).

Defendant's Information:

Lowe's denies Mr. Sheldon's claims in their entirety. Lowe's terminated Mr. Sheldon for a violation of its policies and procedures. Lowe's conducted a thorough investigation prior to terminating Mr. Sheldon, and the termination was vetted by human resources. None of Mr. Sheldon's alleged protected activities played any role in his separation, and he was never subjected to any unlawful treatment. Lowe's never denied Mr. Sheldon any accommodation, and Lowe's neither interfered with his FMLA rights nor retaliated against him for his use of FMLA leave.

3. **Date Rule 26(f) Conference was held, the identification of those participating therein and the identification of any party who may not yet have been served or entered an appearance as of the date of said Conference:**

    The Rule 26(f) Conference was held on September 10, 2019. Julia Clark, Esq. and Michael E. Truncellito, Esq. participated in the call.

4. **Date of Rule 16 Initial Scheduling Conference as scheduled by the Court**: *(Lead Trial Counsel and unrepresented parties shall attend the Rule 16 Initial Scheduling Conference with their calendars in hand for the purpose of scheduling other pre-trial events and procedures, including a Post-Discovery Status Conference; Counsel and unrepresented parties shall attend the Rule 16 Initial Scheduling Conference prepared to discuss the anticipated number of depositions and identities of potential deponents and the anticipated dates by which interrogatories, requests for production of documents and requests for admissions will be served):*

    Rule 16 Conference is scheduled for October 3, 2019.

    First set of Interrogatories, Requests for Production of Documents and Requests for Admissions will be served on or before October 3, 2019.

5. **Identify any party who has filed or anticipates filing a dispositive motion pursuant to Fed. R. Civ. P. 12 and the date(s) by which any such anticipated motion may be filed:**

    N/A.

6. **Designate the specific Alternative Dispute Resolution (ADR) process the parties have discussed and selected, if any, and specify the anticipated time frame for completion of the ADR process. Set forth any other information the parties wish to communicate to the court regarding the ADR designation:**

The parties are amenable to Mediation. In accordance with the ADR Policies and Procedures, a Stipulation Selecting ADR process will be filed separately. Counsel for the parties have discussed the matter and do not believe that an early mediation will be fruitful. Therefore, the parties request 150 days from the date of the Rule 16 Initial Scheduling Conference to complete the ADR process.

7. **Set forth any change that any party proposes to be made in the timing, form or requirements of Fed. R. Civ. P. Rule 26(a) disclosures, whether such change is opposed by any other party, whether any party has filed a motion seeking such change and whether any such motion has been ruled on by the Court**:

   None.

8. **Subjects on which fact discovery may be needed**. *(By executing this report, no party shall be deemed to (1) have waived the right to conduct discovery on subjects not listed herein or (2) be required to first seek the permission of the Court to conduct discovery with regard to subjects not listed herein):*

   Discovery will be needed on these subjects: Terms and conditions of Plaintiff's employment; Plaintiff's duties and responsibilities; Plaintiff's FMLA needs and health conditions at issue; Plaintiff's separation from employment; Plaintiff's alleged damages.

9. **Set forth suggested dates for the following** *(The parties may elect by agreement to schedule a Post-Discovery Status Conference, as identified in Paragraph 12, below, at the conclusion of Fact-Discovery rather than at the conclusion of Expert Discovery. In that event, the parties should provide suggested dates only for the events identified in sub-paragraphs 9.a through 9.e, below. The parties shall provide such information even if dispositive motions pursuant to Fed. R. Civ. P. 12 have been or are anticipated to be filed. If there are dates on which the parties have been unable to agree, set forth the date each party proposes and a brief statement in support of each such party's proposed date. Attach to this report form a proposed Court Order setting forth all dates agreed to below and leaving a blank for the insertion of a date by the Court for any date not agreed to):*

    a. **Date(s) on which disclosures required by Fed. R. Civ. P. 26(a) have been or will be made:** September 24, 2019.

    b. **Date by which any additional parties shall be joined:** N/A

    c. **Date by which the pleadings shall be amended:** October 31, 2019.

    d. **Date by which fact discovery should be completed:** March 2, 2019

    e. **If the parties agree that discovery should be conducted in phases or limited to or focused on particular issues, identify the proposed phases or issues and the dates by which discovery as to each phase or issue should be completed:** The parties do not believe that discovery should be conducted in phases.

      f.      **Date by which plaintiff's expert reports should be filed:** The parties request that dates pertaining of expert discovery be set at the Post-Discovery Status Conference following the close of fact discovery.

      g.      **Date by which depositions of plaintiff's expert(s) should be completed:** The parties request that dates pertaining of expert discovery be set at the Post-Discovery Status Conference following the close of fact discovery.

      h.      **Date by which defendant's expert reports should be filed:** The parties request that dates pertaining of expert discovery be set at the Post-Discovery Status Conference following the close of fact discovery.

      i.      **Date by which depositions of defendant's expert(s) should be completed:** The parties request that dates pertaining of expert discovery be set at the Post-Discovery Status Conference following the close of fact discovery.

      j.      **Date by which third party expert's reports should be filed:** The parties request that dates pertaining of expert discovery be set at the Post-Discovery Status Conference following the close of fact discovery.

      k.      **Date by which depositions of third party's expert(s) should be completed:** The parties request that dates pertaining of expert discovery be set at the Post-Discovery Status Conference following the close of fact discovery.

10.    **If the parties agree that changes should be made to the limitations on discovery imposed by the Federal Rules of Civil Procedure or Local Rule or that any other limitations should be imposed on discovery, set forth such changes or limitations:**

    The parties consent to service by electronic means pursuant to Rule 5(b)(2)(e) of the Fed. R. Civ. P. No other changes are requested by the parties at this time.

11.    **Please answer the following questions in regard to the discovery of electronically stored information ("ESI"):**

      a.      **ESI.** Is either party seeking the discovery of ESI in this case?

           Yes.

      b.      **ESI Discovery Plan.** The parties have reviewed and discussed the Court's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information set forth in "Appendix LCvR 26.2.C-CHECKLIST" to the Local Rules and the parties agreed that, in light of the facts and issues in this case, there is no need to complete an ESI discovery plan. The parties will engage in an ongoing conversation to identify and produce ESI. Should any issues arise during discovery the parties will make a good faith effort to resolve these issues amicably.

     **c.**    **Preservation.**

        There are no unresolved issues known to the parties at this time pertaining to the preservation of ESI.

     **d.**    **ADR.**  Does any party believe that the exchange of ESI is necessary prior to conducting meaningful Alternative Dispute Resolution ("ADR") in this case?

        X Yes      ☐ No

     **e.**    **Clawback Agreement**. The parties have reviewed F.R.C.P. 26(b)(5), F.R.E. 502 and LCvR 16.1.D, Procedures Following Inadvertent Disclosure, and:

        **X** Request the Court enter an Order implementing Federal Rule of Evidence 502(d) such as the model Order set forth in "Appendix LCvR 16.1.D" to the Local Rules and filed with this Report.

     **f.**    **EDSM and E-Mediator.**  Does any party believe that the appointment of an E-Discovery Special Master ("EDSM") or E-Mediator would help resolve ESI discovery issues in this case? For further information, see the Court's official website at http://www.pawd.uscourts.gov.
        ☐ Yes    **X** No

     **g.**    **Other**. Identify all outstanding disputes concerning any ESI issues:

        There are no outstanding issues or disputes concerning ESI at this time.

**12.**    **Set forth whether the parties have elected to schedule the Post-Discovery Status Conference following the completion of Fact Discovery or Expert Discovery; in either event the parties shall be prepared at the Post-Discovery Status Conference to discuss and/or schedule the following: (The parties are *not* required during their Rule 26(f) Conference to consider or propose dates for the items identified below. Those dates will be determined, if necessary, at the Post-Discovery Status Conference. Lead trial counsel for each party and each unrepresented party are required to attend the Post-Discovery Status Conference with their calendars in hand to discuss those items listed below that require scheduling. In addition, a representative with settlement authority of each party shall be required to attend; representatives with settlement authority of any insurance company providing any coverage shall be available throughout the Conference by telephone):**

The parties have elected to schedule to Post-Discovery Status Conference following the completion of Fact Discovery.

**13.**    **Set forth any other order(s) that the parties agree should be entered by the court pursuant to Fed. R. Civ. P. 16(b) or 26(c):**

N/A

14. Set forth whether the parties anticipate that the court may have to appoint a special master to deal with any matter and if so, specify the proposed role of any such master and any special qualifications that such master may require to perform such role:

    N/A

15. If the parties have failed to agree with regard to any subject for which a report is required as set forth above, except for proposed dates required in paragraph 9, above, briefly set forth the position of each party with regard to each matter on which agreement has not been reached:

    N/A

16. Set forth whether the parties have considered the possibility of settlement of the action and describe briefly the nature of that consideration:

    Plaintiff will convey a settlement demand prior to the Rule 16 conference. The parties will consider the possibility of settlement after Plaintiff conveys his initial demand.

Respectfully submitted,

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
*Attorney for Plaintiff*


*/s/ Michael E. Truncellito*
Michael E. Truncellito, Esq.
*Attorney for Defendant*

Dated: September 19, 2019